23-8000
*Ortega Yaguachi v. Bondi*

BIA
Christensen, IJ
A220 574 542
A240 479 375/376

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of March, two thousand twenty-six.

PRESENT:
> GERARD E. LYNCH,
> ALISON J. NATHAN,
> SARAH A. L. MERRIAM,
> *Circuit Judges.*

_____

MARIA DELFINA ORTEGA YAGUACHI, MARCO GEOVANNY QUINCHI ORTEGA, J.M.Q.O.,[1]
> *Petitioners,*

---

[1] We use only initials to refer to the minor petitioner in this publicly accessible order, consistent with Federal Rule of Civil Procedure 5.2(a)(3) and Federal Rule of Appellate Procedure 25(a)(5).

                              v.                                    23-8000
                                                                    NAC

**PAMELA BONDI, UNITED STATES**
**ATTORNEY GENERAL,**
          *Respondent.*[2]

_____

**FOR PETITIONERS:**          Matthew Krein, MacMurray & Associates,
                              New York, NY.

**FOR RESPONDENT:**           Brian M. Boynton, Principal Deputy Assistant
                              Attorney General; Anthony C. Payne,
                              Assistant Director; Raya Jarawan, Trial
                              Attorney; Office of Immigration Litigation,
                              United States Department of Justice,
                              Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of

Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND

DECREED that the petition for review is DENIED.

Petitioners Maria Delfina Ortega Yaguachi and her children, all natives and

citizens of Ecuador, seek review of a November 14, 2023, decision of the BIA

affirming a January 12, 2023, decision of an Immigration Judge ("IJ" and, together

with the "BIA," "the agency") denying asylum, withholding of removal, and relief

---

[2] The Clerk of Court is respectfully directed to amend the official case caption to
conform to the caption above.

2

under the Convention Against Torture ("CAT"). *In re Ortega-Yaguachi, et al.*, Nos. A 220 574 542, A 240 479 375/376 (B.I.A. Nov. 14, 2023), *aff'g* Nos. A 220 574 542, A 240 479 375/376 (Immigr. Ct. N.Y.C. Jan. 12, 2023). We assume the parties' familiarity with the underlying facts and procedural history.

Where, as here, "the BIA adopts the decision of the IJ and merely supplements the IJ's decision . . . we review the decision of the IJ as supplemented by the BIA." *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). "We review *de novo* questions of law and the application of law to fact" and "[w]e review the agency's factual findings, including adverse credibility findings, under the substantial evidence standard." *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

To qualify for asylum, an applicant must provide "evidence of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Liang v. Garland*, 10 F.4th 106, 111 (2d Cir. 2021) (citation modified). Persecution is "the infliction of suffering or harm upon those who differ on the basis of a protected statutory

3

ground." *Id.* at 112 (citation modified). "To qualify as persecution the conduct at issue must be attributable to the government, whether directly because engaged in by government officials, or indirectly because" – as alleged here – it is "engaged in by private persons whom the government is unable or unwilling to control." *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020) (citation modified).

Generally, an applicant may establish asylum eligibility "based on nothing more than [her] own testimony, so long as that testimony is credible." *Liang*, 10 F.4th at 113. But in certain circumstances an IJ may request corroborating evidence that can be "reasonably obtain[ed]." *Id.* at 113 n.6 (citation modified). "Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an

4

adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008).

## I.  Credibility Findings

Substantial evidence supports the agency's determination that Ortega Yaguachi's testimony was not credible, given inconsistencies between her testimony and the documentary evidence.  First, she testified that she invested her and her husband's own life savings into an investment company, but the investment document she submitted lists only her brother as the investor and beneficiary.  Her explanation that her brother tried to help her secure a refund does not explain why the evidence reflects that he was the *sole* investor.  *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (citation modified)).

Second, in her written statement, Ortega Yaguachi asserted that the investment company offered her land to settle the lawsuit that she had brought against the company, and that she visited the land with her lawyer, only to discover "that the land they were offering wasn't even theirs."  Certified Admin.

5

R. ("CAR") at 125.   In direct contradiction to that written statement, however, Ortega Yaguachi testified that no land was offered or shown to her.   Contrary to her argument here, the transcript does not suggest interpretation problems that would explain the discrepancy between the written statement and her testimony; Ortega Yaguachi's answers were generally responsive and on topic, suggesting she understood the substance of the questions.   *See Juan Lin v. Holder*, 369 F. App'x 229, 230 (2d Cir. 2010) (declining to consider arguments regarding translation because petitioner pointed to "no specific problem with the translation during [the] hearing and the transcript reveals no apparent translation issues").

## II.    Lack of Corroboration

The IJ also reasonably relied on the lack of reliable evidence corroborating Ortega Yaguachi's testimony.   "[I]t is well established that an applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question."   *Malets v. Garland*, 66 F.4th 49, 57 (2d Cir. 2023) (citation modified).   "We generally defer to the agency's evaluation of the weight to be afforded an applicant's documentary evidence."   *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013).

First, the legal documents Ortega Yaguachi submitted do not establish that the Ecuadorian government is unable or unwilling to protect her: she opened a case by filing a complaint in 2015, and the case remained open until 2017, when it was closed due to insufficient evidence. Second, a letter written by Ortega Yaguachi's father states that she was threatened by the investment company's managers, but it does not corroborate her allegation that she and her husband, son, and brother were physically assaulted. And her father's letter indicates that Ortega Yaguachi filed the complaint in 2017, not 2015. Last, the IJ found that Ortega Yaguachi failed to submit reasonably available corroboration in the form of testimony or statements from her husband and brother.

Ortega Yaguachi's arguments here that her husband's trauma made him unavailable and that she did not know she needed corroborating evidence are unexhausted because she did not present them to the BIA. *See Ud Din v. Garland*, 72 F.4th 411, 419 (2d Cir. 2023) (noting that exhaustion is generally mandatory when the government raises it); *Vera Punin v. Garland*, 108 F.4th 114, 124 (2d Cir. 2024) ("[W]hen an argument made to this Court cannot be closely matched up with a specific argument made to the BIA, it has not been properly exhausted and we cannot hear it."). And even if exhausted, we would not find these arguments

7

compelling; there was no evidence of Ortega Yaguachi's husband's condition, she was represented by counsel during the agency proceedings, and she had the "burden of introducing [corroborating] evidence without prompting from the IJ." *Wei Sun v. Sessions*, 883 F.3d 23, 31 (2d Cir. 2018) (citation modified).

In sum, substantial evidence supports the IJ's adverse credibility determination. *See Likai Gao v. Barr*, 968 F.3d 137, 145 n.8 (2d Cir. 2020) ("[E]ven a single inconsistency might preclude an alien from showing that an IJ was compelled to find [her] credible. Multiple inconsistencies would so preclude even more forcefully."); *see also Malets*, 66 F.4th at 57.

## III. Pattern or Practice of Persecution

In addition to addressing credibility, the agency concluded that Ortega Yaguachi had not established a fear of future persecution based on her status as an indigenous woman. An applicant can establish a well-founded fear of persecution by demonstrating "a pattern or practice . . . of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.13(b)(2)(iii); *see also id.* § 1208.16(b)(2). A pattern or practice claim requires an applicant to demonstrate that persecution of a particular group is

8

"systemic, pervasive, or organized." *In re A-M-*, 23 I. & N. Dec. 737, 741 (B.I.A. 2005) (citation modified). Instances of "discrimination and harassment" are not enough to establish persecution. *Id.* (citation modified).

We find no error in the agency's conclusion. Ortega Yaguachi cites a 2021 State Department Human Rights Report to argue that indigenous Ecuadorian women face racism and discrimination. However, even assuming that the forms of discrimination discussed in the report—economic and wage disparities, discrimination in housing access, and difficulties reporting alleged sexual abuse—could amount to persecution, they are distinct from the discrimination Ortega Yaguachi has alleged. The report also indicates that Ecuador's constitution protects indigenous communities and women and that there are specific legal protections to address harms particular to both groups. Ortega Yaguachi does not point to evidence suggesting that these policies are not broadly enforced, or that discrimination is so pervasive or severe that it rises to the level of persecution. *See In re A-M-*, 23 I. & N. Dec. at 741–42; *see also Mei Fun Wong v. Holder*, 633 F.3d 64, 72 (2d Cir. 2011) (observing that "persecution is an extreme concept that does not include every sort of treatment our society regards as offensive" (citation modified)).

9

For the reasons discussed, the IJ and BIA did not err in concluding that Ortega Yaguachi failed to meet her burden for asylum eligibility. Because her "withholding and CAT claims depend upon the same factual predicate that [s]he failed to establish for asylum, those claims for relief also fail." *En Di Huang v. U.S. Att'y Gen.*, 228 F. App'x 14, 17 (2d Cir. 2007).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court